IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| DANIEL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:09-CV-042 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons that follow, defendant's motion for summary judgment [doc. 15] will be granted, and plaintiff's motion for summary judgment [doc. 8] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff was born in 1964 and reports a seventh grade education. [Tr. 52, 63]. He has no prior relevant employment. [Tr. 59]. The administrative record indicates that this is at least his fifth application for SSI. [Tr. 24-25]. Plaintiff received benefits beginning in 1995 due to alcoholism, but those payments were terminated in 1997 following a change in

Social Security law pertaining to drug and alcohol abuse. [Tr. 24].[1]

The termination of plaintiff's prior benefits was made final by the August 8, 2002 decision of Administrative Law Judge ("ALJ") Michael Davenport. Of particular relevance to the present appeal are the following portions of ALJ Davenport's decision:

> The claimant was originally found disabled on the basis of alcohol abuse. Credible evidence of record indicates that he has been sober for five years. . . .
>
> . . .
>
> . . . He has moderately severe obstructive defect documented by pulmonary function studies. Because of this impairment, the undersigned finds the claimant is restricted to light work which does not expose him to respiratory irritants or to temperature extremes. . . . Because of his personality disorder, he cannot work with the public. . . .

[Tr. 25-26].

Plaintiff then filed the present SSI application in May 2003, claiming to be disabled as of April 22, 2003, by anxiety, agoraphobia, depression, "anti social personality disorders," hypertension, chronic obstructive pulmonary disease ("COPD"), emphysema, asthma, bronchitis, a history of seizures, "stomach problems, hyperventilating [and] dizziness." [Tr. 52, 58, 67, 276]. The claim was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place in November 2004 before ALJ William Overton. In February 2005, ALJ Overton issued a decision denying benefits.

---

[1] In paperwork submitted in support of the present application, plaintiff on July 5, 2003, told the Commissioner that he no longer uses alcohol or drugs. [Tr. 80-81]. The veracity of that statement will be discussed at some length *infra*.

Plaintiff then sought review from the Commissioner's Appeals Council. On February 21, 2007, review was denied. [Tr. 7]. Plaintiff then appealed his claim to this court, and on January 4, 2008, the Honorable J. Ronnie Greer approved the parties' agreed order of remand. Pursuant to the terms of that order, the Commissioner was to "reevaluate Plaintiff's residual functional capacity in accordance with the Drummond Acquiescence Ruling, AR 98-4(6)." [Tr. 328].[2]

Following remand, plaintiff received his most recent administrative hearing in July 2008 before ALJ S.D. Schwartzberg. In August 2008, ALJ Schwartzberg issued a decision denying benefits. He concluded that plaintiff suffers from COPD, "possible history of syncopal episodes, and anxiety," which are "severe" impairments but not equal to any impairment or impairments listed by the Commissioner. [Tr. 316]. Terming plaintiff's credibility "diminished" and his subjective complaints "not supported by the record as a whole," ALJ Schwartzberg found plaintiff to have the residual functional capacity ("RFC") to perform a range of light to medium work with only moderate exposure to hazards and respiratory irritants, and with only occasional contact with the general public. [Tr. 316-20]. ALJ Schwartzberg specifically characterized his findings as "consistent with" *Drummond*. [Tr. 316]. Relying on vocational expert ("VE") testimony, ALJ Schwartzberg determined

---

[2] AR 98-4(6) acquiesces in, for claims within the Sixth Circuit, the 1997 holding of the Sixth Circuit Court of Appeals in *Drummond v. Commissioner of Social Security*, 126 F.3d 837. In material part, AR 98-4(6) and *Drummond* require that an ALJ must adopt the RFC findings from a prior final decision of the Commissioner "unless there is new and material evidence relating to such a finding."

that plaintiff remains able to perform a significant number of jobs existing in the regional economy. [Tr. 319-20]. Plaintiff was accordingly again deemed ineligible for SSI payments.

Plaintiff then again sought, and was denied, Appeals Council review. [Tr. 299]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. Through his timely complaint, plaintiff has properly again brought his case before this court for review. *See* 42 U.S.C. § 405(g).

## II.

### *Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

An individual is eligible for SSI on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.*

III.

*Analysis*

Two theories can be discerned from plaintiff's briefing in the present appeal. First, he argues that ALJ Schwartzberg did not comply with the court's prior remand order. Plaintiff also submits that ALJ Schwartzberg improperly disregarded the opinions of Dr. Krish Purswani, Dr. Susan O'Brien, and treating nurse practitioners Deborah Poole and Tina Killebrew. The court will address those points in turn. Any issue not specifically raised by plaintiff has been waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).

A. *Drummond*

*Drummond* and AR 98-4(6) require that absent "changed circumstances" an ALJ is bound by the findings of a prior ALJ's final decision. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-43 (6th Cir. 1997). In the previous "final decision" now relevant to the court's *Drummond* analysis, ALJ Davenport on August 8, 2002, found plaintiff incapable of *any* exposure to workplace respiratory irritants (due to COPD) and incapable of *any* interaction with the public (due to a personality disorder). [Tr. 26]. In the decision now on appeal, ALJ Schwartzberg found plaintiff limited to *no more than moderate*

6

exposure to workplace respiratory irritants and *no more than occasional* contact with the public. [Tr. 316].

Although ALJ Schwartzberg termed his findings "consistent with the <u>Drummond Acquiescence Ruling</u>," on its face his decision obviously is not. Plaintiff is correct that ALJ Schwartzberg's decision is devoid of any meaningful *express* explanation of how his "moderate" and "occasional" limitations relate under *Drummond* to the more restrictive "no exposure" RFC previously imposed by ALJ Davenport.

The court cannot agree, however, with plaintiff's contention that "the ALJ [Schwartzberg] has cited no evidence to indicate an improvement in Plaintiff's personality disorder or respiratory impairment, [and thus] he was bound by the findings in the prior final decision." [Doc. 9, p. 10]. On the facts of the present case, the court finds the lack of express *Drummond* analysis to be no more than harmless error. ALJ Schwartzberg at length cited objective evidence both of medical improvement *and* of changed circumstances pertaining to the believability of plaintiff's subjective complaints. Substantial evidence therefore supported the conclusion that plaintiff is not as limited as found by ALJ Davenport. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (harmless error where the ALJ's reasoning could be inferred from his overall discussion of the condition).[3]

---

[3] The court again notes that ALJ Davenport's decision is dated August 8, 2002. Evidence of medical improvement and changed circumstances would be found in the evidence postdating ALJ Davenport's ruling. It should be further noted that ALJ Davenport's findings were affected by what at that time appeared to be "[c]redible evidence of record indicat[ing] that he has been sober for five years." [Tr. 25].

Dr. Susan Bland and psychologist Dr. Thomas Schacht testified as medical experts at plaintiff's 2008 administrative hearing before ALJ Schwartzberg. Dr. Bland reviewed the medical record pertaining to plaintiff's physical condition dating back to 1982. Of particular relevance, Dr. Bland noted "a pretty stable situation with pulmonary function" as shown by March 2004 testing [Tr. 429], along with lower "questionably invalid" 2006 pulmonary function test results. [Tr. 431]. Dr. Bland summarized the objective evidence as showing "relatively stable" COPD which "at the worst would be of a moderate impairment." [Tr. 432]. Dr. Bland also noted 2005 and 2006 evidence of plaintiff's continued alcohol abuse "with a lot of conflicting reports of how much is being used." [Tr. 429, 431-33]. Dr. Bland then opined that

> as far as limitation is concerned, I think they'd be mainly because of the COPD. . . . So I think the limitations would be mainly in the somewhere between medium and light, with a lifting of about 30 to 35 occasional, 15 to 20 frequent. Exposure limited to moderate amounts of dust, fumes, et cetera, irritants, excessive heat or cold, and avoid climbing ladders, working at unguarded heights, hazardous equipment or machinery, driving.

[Tr. 433]. In response to questioning from plaintiff's counsel, Dr. Bland further testified that plaintiff's alleged limitations pertaining to COPD, back pain, hypertension, and arthritis are *subjective* in nature. [Tr. 435-36].

Dr. Schacht then provided testimony regarding plaintiff's mental and emotional functioning. Dr. Schacht first noted the history of adverse effects caused by plaintiff's alcohol abuse and the post-2004 "conflicting evidence about that sort of thing." [Tr. 437-39]. Dr. Schacht ultimately opined that plaintiff's "assertion that he has crippling anxiety that

8

confines him to his house, is ultimately going to have to be a credibility determination by the court." [Tr. 439-40]. When questioned by plaintiff's counsel regarding prior diagnoses of a personality disorder, Dr. Schacht responded,

> The primary criteria in for [sic] any [sic] social personality is persistent violation of the law and violation of the rights of other people. It's the inability to keep your behavior within the bounds of the law. And one of the exclusionary criteria for that is that the behavior should occur outside the contexts [sic] of substance abuse. So that if you have a history of lots of run in's [sic] with the law, but they've all occurred in connection with alcohol abuse or mostly occurred in connection with alcohol abuse. [sic] It's not a personality disorder it's just under the face of the substance abuse. As I understand the criminal history it's almost entirely maybe all substance related. And for that reason I don't think that antisocial personality applies.

[Tr. 443].

In his hypothetical questioning to the VE, ALJ Schwartzberg adopted Dr. Bland's conclusions and further restricted plaintiff to "simple routine repetitive work, with occasional public contact." [Tr. 445]. Similarly, in his written decision, ALJ Schwartzberg cited at length and adopted the conclusions of Drs. Bland and Schacht, the testifying medical experts. Despite the credibility concerns rampant in the administrative record, ALJ Schwartzberg also "afforded the claimant the benefit of the doubt" in restricting the RFC to simple tasks and "moderate difficulties in maintaining social interaction." [Tr. 318].

Specifically, as to post-August 8, 2002 evidence of medical improvement and changed circumstances pertaining to the ability to work around respiratory irritants and the public, and the underlying diagnoses of COPD and personality disorder, ALJ Schwartzberg cited and discussed:

9

> 1. Observations of stable conditions by treating sources in 2002 through 2004 [Tr. 311];
>
> 2. A 2003 consultative psychological examination which assessed secondary gain motivation but no significant impairment in any area, including social interaction [Tr. 311-12];
>
> 3. Stable 2004 pulmonary function testing [Tr. 312, 314-15]; and,
>
> 4. The testimony of Drs. Bland and Schacht regarding evidence of continued alcohol abuse and drug-seeking behavior [Tr. 314-15].

ALJ Schwartzberg's *Drummond* reasoning therefore can be inferred from his overall discussion of plaintiff's condition. Substantial evidence of medical improvement and changed circumstances exists in the present administrative record relating to plaintiff's COPD and alleged personality disorder. Any error resulting from ALJ Schwartzberg's lack of detailed analysis is deemed harmless. *See Wilson*, 378 F.3d at 547.

### B. Opinion Evidence

Plaintiff next argues that the opinions of sources other than Drs. Bland and Schacht direct a finding of disability. As noted, the testifying medical experts affirmed that plaintiff's complaints are subjective in nature, necessitating "a credibility determination by the court." [Tr. 435-36, 439-40]. ALJ Schwartzberg ultimately adopted the opinions of Drs. Bland and Schacht, finding them more credible and better supported than plaintiff's subjective allegations. As also noted, ALJ Schwartzberg found plaintiff's credibility "diminished" and his subjective complaints "not supported by the record as a whole." [Tr. 317-18].

10

Plaintiff's believability is thus obviously an issue as the court turns its review to the alternate medical opinion evidence. The court has observed a striking number of inconsistencies in the present administrative record. Before addressing plaintiff's arguments pertaining to the opinion evidence of Drs. Purswani and O'Brien and nurse practitioners Poole and Killebrew, a brief summary of the court's credibility concerns is warranted. First, pertaining to the recurring issue of plaintiff's history of substance abuse, the following is noted:

> 1. Under prior law, plaintiff previously received SSI payments on the basis of substance abuse. The testimony of Drs. Bland and Schacht cite a history of "actively using heavy amounts of alcohol" and "actively and heavily drinking." [Tr. 427, 438].
>
> 2. On July 5, 2003, plaintiff told the Commissioner that he no longer uses alcohol or drugs. [Tr. 80-81]. At the December 2003 consultative examination by psychologist Steven Lawhon, plaintiff denied alcohol abuse. [Tr. 145]. In November 2004, plaintiff denied using more than minimal alcohol. [Tr. 379]. In May 2005, plaintiff told social worker Pamela Davison that he had not used alcohol since at least 1995. [Tr. 240]. In April 2008, plaintiff told Dr. Purswani that he does not use alcohol. [Tr. 357].
>
> 3. However, in February 2005, in striking contrast to his report to Ms. Davison three months later, plaintiff appeared at Family Physicians of Kingsport emitting a "VERY strong odor" of alcohol. [Tr. 247] (emphasis in original). Dr. E. Harris recorded plaintiff's allegation that his Xanax had been "'stolen' after he took his entire bag of medications to his ex-girlfriend's house and became intoxicated." [Tr. 247]. Dr. Harris ordered that plaintiff be immediately tapered off of Xanax and advised that plaintiff would "no longer receive controlled substances from our clinic." [Tr. 248].

4. Plaintiff reappeared at Family Physicians of Kingsport the following month to "get refills and discuss Dr. Harris terminating his Xanax [prescription]." [Tr. 245]. Plaintiff again insisted that his medication had been "stolen," but Dr. Blackwelder found it "difficult to tell if [patient] is truthful or not." [Tr. 245]. Plaintiff admitted to not tapering off of Xanax as instructed, and "also admitted to use of non-prescribed [benzodiazepines] as well as obtaining 'benzos' 'off the street.'" [Tr, 246]. Dr. Blackwelder issued another Xanax taper prescription because plaintiff was exhibiting possible pre-delirium tremens symptoms. [Tr. 246].

5. Plaintiff then presented to nurse practitioner Catherine Raff of Rural Health Services Consortium in May 2005 to establish as a new patient and to get a Xanax refill. [Tr. 253, 255]. Plaintiff is noted to have explained,

> He was previously being followed by Family Practice. States that he wasn't getting along with them . . . . He had been on Xanax for a long time and his Xanax was stolen, so then they changed the dosing on his Xanax and reduced the number of them and he ended up having to borrow some from his family members which he hated to do because they are all on Xanax and everybody needs it.

[Tr. 255]. Plaintiff told Ms. Raff that he consumes "[v]ery little alcohol on a social basis." [Tr. 255].

6. On April 6, 2006, plaintiff told nurse practitioner Elizabeth Krell that he had recently been cited for DUI. [Tr. 264].

7. At a limited consultative examination by Dr. Karl Konrad in March 2004, plaintiff complained of

> spells on a daily basis which he says may or may not be seizures. In each case he says he feels lightheaded for a minute or so and like he is going to pass out, although he does not actually recall passing out. He does say he occasionally wakes up in a room in his home but does not recall lying down in that room. Also sometimes he says he sees bruises on his body and he doesn't know how they got there.

[Tr. 161].

12

In light of the above-cited inconsistencies relating to substance abuse, the veracity and origins of plaintiff's complaints to Dr. Konrad are questionable. More importantly, these inconsistencies call into question the credibility of plaintiff's subjective complaints as a whole. "An individual shall not be considered to be disabled . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

In addition to issues pertaining to substance abuse, the administrative record raises other credibility concerns:

> 1. At the 2004 administrative hearing, plaintiff was asked whether he can drive a car. Plaintiff answered, "I think I can *but I've never had one*." [Tr. 281] (emphasis added). However, on his 2003 SSI application, plaintiff stated that he owned a 1983 Oldsmobile at that time. [Tr. 53][4] In a May 16, 2003 teleclaim interview, plaintiff again acknowledged owning a car, although he claimed to know neither the year nor the model. [Tr. 77].[5] Nurse practitioner Raff noted a laceration on plaintiff's forehead on May 24, 2005. Plaintiff stated that he received the laceration while "driving *his car* last week." [Tr. 252] (emphasis added).

---

[4] Plaintiff signed the application directly below the affirmation, "I understand that anyone who knowingly lies or misrepresents the truth or arranges for someone to knowingly lie or misrepresent the truth is committing a crime which can be punished under Federal law, State law, or both. Everything on this application is the truth as best I know it." [Tr. 54].

[5] The interviewer noted, "Mr[.] Williams was totally unprepared to respond to the simplest of questions regarding the application process . . . . Few direct questions received an immediate, definitive answer. . . . He has a long history of receiving and/or applying for SSI benefits. . . . A long, difficult interview[,] the cause of which is probably not inability but unwillingness." [Tr. 77-78].

13

2. In communications to the Commissioner, plaintiff has denied firm knowledge of even his own marital history and status, but is able to recall that information when communicating with other sources. At the 2004 administrative hearing when asked if he is married, plaintiff answered, "I'm not sure. I got married back in '90, '91. No. 1990 and I don't know if I rather if she ever got a divorce or not." [Tr. 277]. On his 2003 SSI application plaintiff again purported not to know whether he was married at the time. [Tr. 52]. In the 2003 teleclaim interview, plaintiff was noted to have told the Commissioner that "he did not know if he was married; had ever been legally married or if he was divorced. He did not know the last name of the woman he may have married . . . ." [Tr. 77]. However, the December 2003 records of Dr. Lawhon show that plaintiff plainly reported, "He married when he was 25 and this marriage lasted a year and ended in divorce. They did not have any children." [Tr. 145]. Also, to Frontier Health staff in July 2005, plaintiff could recall that he had been married, that he has one or two biological children from other relationships, and that his "stepsons were teens and abusive." [Tr. 232].

3. Plaintiff's health care providers have specifically instructed him to stop smoking in light of his COPD diagnosis [Tr. 125, 131, 176], but plaintiff is described as "uninterested." [Tr. 176]. Further, plaintiff acknowledges that his respiratory problems are "worse" when he smokes. [Tr. 381, 383, 390, 395]. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) ("The claimant's style of life is not consistent with that of a person who suffers from [the limitations alleged].")

4. In 2002, nurse practitioner Poole "suggested strongly" and "very frank[ly]" that plaintiff obtain mental health counseling, telling him that "I don't want to just keep throwing medicine [at] this." [Tr. 110]. Plaintiff agreed, but wanted "[no] major [change] until [his Social Security] suit is resolved." [Tr. 110].

5. Plaintiff is provided myriad prescription medications free of cost. [Tr. 184-206]. At the 2008 administrative hearing, plaintiff testified that he cannot afford $3.00 respiratory medication [Tr. 419], yet he can afford up to two packs of cigarettes per day. [Tr. 268-69]. *See Sias*, 861 F.2d at 480.

6. Plaintiff also testified that he "cut [his right] thumb off" [Tr. 414] but that alleged significant event/condition is not mentioned anywhere in the objective record. Similarly, plaintiff testified that he suffered an "aneurism" in the left wrist [Tr. 416] but that contention is also not supported by the objective record.

14

In light of the above, substantial evidence supports ALJ Schwartzberg's conclusion that plaintiff's credibility is "diminished" and that his subjective complaints are "not supported by the record as a whole."

Turning to the medical source opinions, plaintiff first cites Dr. Purswani, who performed a consultative examination in April 2008. Despite pulmonary function testing showing only moderate obstruction [Tr. 359], Dr. Purswani rendered a vocational assessment opinion slightly more restrictive than that of Dr. Bland. [Tr. 359-65]. However, Dr. Purswani's views were based on plaintiff's subjective reporting [Tr. 359] and thus were properly rejected by ALJ Schwartzberg.

Plaintiff also argues that VE testimony allegedly pertaining to Dr. Purswani's assessment was improperly disregarded. Plaintiff's attorney asked the vocational expert whether an additional limitation to occasional "*handling, gross and fine manipulation*" would impact the existing job base, to which the VE responded that all employment would be eliminated. [Tr. 448] (emphasis added). However, Dr. Purswani actually opined that plaintiff can *continuously* engage in handling and manipulation. [Tr. 362]. It was instead pushing and pulling that Dr. Purswani limited to an occasional basis (again in reliance on plaintiff's subjective breathing and "seizure" complaints), and plaintiff's counsel elicited no testimony from the VE regarding that prediction. Plaintiff's argument is a misstatement of the record meriting no further discussion.

15

Plaintiff next cites short forms completed by nurse practitioner Poole and Dr. O'Brien. In October 2002, Ms. Poole completed a Tennessee Department of Human Services ("DHS") Food Stamp Request for Medical Information form opining that plaintiff would be unable to work for the next twelve months due to "severe anxiety, panic disorder, and agoraphobia." [Tr. 107].[6] In September 2003, Ms. Poole similarly completed a state DHS form opining that "[t]his person is physically or mentally unfit for employment or training for employment . . . [and] unable to work or work [sic] or participate in training for 12 months." [Tr. 108]. Similar forms were completed by Ms. Poole or by Dr. O'Brien between 2000 and 2004 citing panic attacks, agoraphobia, COPD, and/or severe anxiety. [Tr. 207-10].

ALJ Schwartzberg did not err in dismissing these form letters. Determination of ultimate issues such as disability are reserved to the Commissioner, not the treating source. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Further, plaintiff makes no showing that the standards for disability under Tennessee's food stamp program are the same as under the Social Security Act. Lastly, Ms. Poole and Dr. O'Brien's form opinions were plainly based on plaintiff's dubious self-reporting and are thus entitled to minimal weight for the reasons previously discussed herein.

Lastly, plaintiff cites the opinions of nurse practitioner Tina Killebrew. On January 8, 2008, Ms. Killebrew wrote "To Whom It May Concern" that plaintiff "is unable to work at this time due to suffering from chronic medical conditions including COPD, osteoarthritis, lumbago,

---

[6] Oddly however, at his appointment that same date, plaintiff was noted by Ms. Poole to be only "mildly anxious." [Tr. 105].

hypertension, hyperlipidemia, anxiety and depression." [Tr. 355]. Again, determination of ultimate issues such as disability are reserved to the Commissioner, not the treating source. *Harris*, 756 F.2d at 435.

In July 2008, Ms. Killebrew completed a highly restrictive medical assessment form. For example, she opined that plaintiff could neither sit nor stand for more than one half hour each per workday. [Tr. 385].[7] Ms. Killebrew attributed all limitations to COPD, osteoarthritis, hypertension, lumbago, anxiety, and depression. [Tr. 385-86]. However, Ms. Killebrew's notes from plaintiff's two appointments occurring between her two assessments show plaintiff's reports that: medication was controlling his pain; he was not experiencing shortness of breath and was using his inhalers; and medication was helping his depression. [Tr. 381-84]. Ms. Killebrew's 2007 records contain similar information. [Tr. 390-91, 395, 400-01, 407-08]. Her extreme July 2008 assessment therefore was not consistent with her own objective records and was properly disregarded. The assessment was also largely based on plaintiff's self-reporting and thus was entitled to minimal weight. Any error pertaining to ALJ Schwartzberg's failure to expressly discuss the July 2008 assessment is deemed harmless. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

## C. Conclusion

The court concludes by observing that the Bland and Schacht medical expert testimony did not stand alone. Following his consultative mental examination (which post-

---

[7] At the 2008 administrative hearing, ALJ Schwartzberg thrice commented that Ms. Killebrew's assessment was "nonsense" because plaintiff had already been sitting in the hearing room for almost ninety minutes. [Tr. 449-50].

17

dated ALJ Davenport's decision), Dr. Lawhon felt that "[s]econdary gain appears to be present" [Tr. 146] and he predicted no more than mild limitation in any work activity. [Tr. 147]. Dr. Lawhon noted plaintiff's history of "apparently little employment. The reasons for this remain unclear. In most cases like this we would suspect substance abuse. However, the claimant denies alcohol or drug abuse. Certainly he does appear to have a personality disorder, but the reasons for his lifestyle remain unclear." [Tr. 147].

Also, nonexamining Dr. Frank Pennington reviewed plaintiff's medical records and completed a Physical RFC Assessment in March 2004. Dr. Pennington opined that plaintiff could work at the medium level of exertion with no concentrated exposure to respiratory irritants. [Tr. 168, 170]. In support of his opinion, Dr. Pennington cited objective evidence and plaintiff's self-reports postdating ALJ Davenport's decision. [Tr. 171-72].

The substantial evidence standard of review affords ALJs a "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Even assuming *arguendo* that a reasonable mind could have perhaps concluded differently on the ultimate issue of the present plaintiff's disability, that is not the standard of review binding this court. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Excepting the harmless errors noted above, the decision of the Commissioner was supported by substantial evidence and must be affirmed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
    United States District Judge